| | |
|---|---|
| JESUS P. MAFNAS, individually and in his capacity as Personnel Officer of the Northern Mariana Islands, | ) ) ) ) ) DCA **NO.** **80-90**19 <br> ) (CTC **Civ. No.** 80-139) |
| Plaintiff-Appellant, | ) ) ) |
| vs. | ) **OPINION** ) |
| CARLOS S. CAMACHO, individually and as Governor of the Commonwealth of the Northern Mariana Islands, and LUIS S. CAMACHO, Interim Personnel Management Officer of the Northern Mariana Islands, | ) ) ) ) ) ) ) ) ) |
| Defendants-Appellants. | ) ) |

Before:  DUENAS and CONTI, District Judges, **and SOLL,***
         Associate Judge.

DUENAS, District. Judge.

OPINION

This appeal decides the constitutionality of Executive Order No. 18 issued by defendant-appellee Governor Carlos S. Camacho on July 3, 1980.  The Commonwealth Trial Court, Hefner, C.J., held the order constitutional under Article III, Section 15 of the Commonwealth constitution.  We affirm.

I

PROCEDURAL BACKGROUND

This action was initiated by the plaintiff Jesus P. Mafnas.  Plaintiff filed a Complaint for Declaratory and

- - - - - - - - - -

*Honorable Herbert D. Soll, Commonwealth Trial Court Associate Judge, sitting by designation pursuant to 48 U.S.C. §1694b.

302

Injunctive Relief challenging the issuance of Executive Order No. 18 by Governor Carlos S. Camacho. Executive Order No. 18 reallocated the functions and duties of the Office of Personnel as they applied to civil service positions within the Executive Branch of government by transferring them from the Personnel Office to the Office of Personnel Management within the Office of the Governor. Appellant's complaint alleged that Executive Order No. 18 was an unconstitutional infringement upon the authority of the legislative branch of government. Appellant requested the issuance of a permanent injunction forbidding the implementation of Executive Order No. 18.

Defendants filed an answer and counterclaims in response to plaintiff's complaint and asserted that Governor Carlos S. Camacho was exercising constitutionally-granted powers in reallocating the functions of the Personnel Office.

On August 11, plaintiff filed a motion for summary judgment on all issues raised by his complaint. In response, defendants filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Rules of Civil Procedure for the Commonwealth Trial Court. However, because matters outside the pleadings were presented to the Court, the motion was treated as one for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure.

On September 22, 1980 the trial court denied plaintiff's motion for summary judgment and granted that of the defendants.

II

STATEMENT OF FACTS

Plaintiff is the appointed Personnel Officer for the Commonwealth of the Northern Mariana Islands. The Office of Personnel, and the Personnel Officer were creations of the legislature, by virtue of Public Law 1-9 (1978), the

Northern Marianas Civil Service Act of 1978. The Act was itself the legislative response to Article III, Section 16 of the Commonwealth constitution which mandates the legislature to create a non-partisan and independent civil service commission. Section 3(a) of the Act created the Civil Service Commission.[1] Section 3(g) established the Personnel Office headed by a Personnel Officer who is appointed by the Commission with the advice and consent of the Senate.

On July 3, 1980, Governor Camacho issued Executive Order No. 18 which divested the plaintiff of his authority for the implementation of the Civil Service System as it applied to the executive branch.[2] The Order created an entirely new office within the executive branch called

- - - - - - - - - -

[1]The Commission has since been abolished by virtue of this Court's decision in Camacho v. Civil Service Commission (DCA No. 80-9010, filed February 20, 1980) affirming the ruling of the trial court that the manner of appointment of the Commission under Section 3(a) violated the separation of powers doctrine, and hence was unconstitutional. Our decision was affirmed by the Ninth Circuit. Camacho v. Civil Service System (No. 814155, filed Feb. 1, 1982).

The Third Northern Marianas Commonwealth Legislature has since repealed the subject provision and re-enacted a new provision for establishing a Civil Service Commission. Act of March 9, 1982, Commonwealth Public Law No. 3-1 § 3(a). Under the new provision, the seven members of the commission will be appointed by the Governor with the advice and consent of the Senate. As of this date, the Commission has not yet been fully established.

[2]The fifth paragraph of the Order reads:

WHEREAS, it is the intention and purpose of this Executive Order to make various changes in Public Law 1-9 Sections 3, 4, 6, and 9 and it is necessary for the efficient administration of the Government that the functions and duties of the Personnel Office established by Public Law 1-9 be transferred from the abolished Civil Service Commission to the Office of the Chief Administrative Officer of the Executive Branch.

Under Section 2 of Public Law No. 3-1, Executive Order No. 18 shall be vacated upon confirmation by the Commonwealth Senate of a Personnel Officer. During the interim the Personnel Management Officer performs the duties and functions of the Personnel Officer. The plaintiff was appointed as Personnel Management Officer (replacing defendant Luis S. Camacho) by then newly-elected Governor on January 14, 1982.

Office of Personnel headed by a Personnel Management Officer (PMO). Luis S. Camacho, the co-defendant, was appointed as the interim PMO. This office was established within the Office of the Chief Administrative Officer of the executive branch.

Because the Order changed provisions contained in various existing laws, it was submitted to both the House of Representatives and the Senate for approval, disapproval or modification as provided for by Section 15 of Article III in the Constitution. Each house of the legislature considered Executive Order No. 18 for sixty days but declined to disapprove or modify it. Upon the expiration of sixty days the Order became law on September 4, 1980.

### III

### ISSUES PRESENTED FOR REVIEW

1. WHETHER THE GOVERNOR HAS THE POWER TO REALLOCATE EXECUTIVE FUNCTIONS AND REORGANIZE EXECUTIVE DEPARTMENTS, AGENTS AND INSTRUMENTALITIES.

2. WHETHER THE DUTIES AND FUNCTIONS OF THE PERSONNEL OFFICE ARE EXECUTIVE FUNCTIONS.

3. WHETHER THE GOVERNOR HAS THE POWER TO TRANSFER THE FUNCTIONS AND DUTIES OF THE PERSONNEL OFFICE INCLUDING ITS APPROPRIATIONS TO THE OFFICE OF PERSONNEL MANAGEMENT.

### IV

### ANALYSIS

A. Constitutional Validity of the Executive Order

The power of the Governor to issue executive orders affecting changes in the offices within the executive branch is found in Article III, Section 15 of the Constitution:

> Section 15: Executive Branch Departments.
> Executive branch offices, agencies and instrumentalities of the Commonwealth government and their respective functions and duties shall be

305

allocated by law among and within not more than fifteen principal departments so as to group so far as practicable according to major purposes. Regulatory, quasi-judicial and temporary agencies need not be a part of a principal department. The functions and duties of the principal departments and of other agencies of the Commonwealth shall be provided by law. The legislature may reallocate offices, agencies and instrumentalities among the principal departments and may change their functions and duties. The governor may make changes in the allocation of offices, agencies and instrumentalities and in their functions and duties that are necessary for efficient administration. If these changes affect existing law, they shall be set forth in executive orders which shall be submitted to the legislature and shall become effective sixty days after submission, unless specifically modified or disapproved by a majority of the members of each house of the legislature. (emphasis added).

It is undisputed that the Governor issued Executive Order No. 18 with the intent and design to affect existing laws.[3] It is also true that more than sixty days had elapsed since the Order was submitted to the legislature and that neither of the two houses modified or disapproved the Order.

Plaintiff argues that Section 15 does not give the Governor the power to create a new office or entity of the government. He claims that the Order did not reallocate an existing office but rather created an entirely new one. He argues that the trial court erred in holding that the Governor may attempt to reorganize an executive functions by executive order and to reallocate the duties of one executive office to another pursuant to the same executive order. See Order Denying Motion for Summary Judgment at p. 4.

- - - - - - - - - -

[3]The changes brought about by the Order affecting the following laws:

> Public Law 1-8 (Executive Branch Organization Act of 1978
> Public Law 1-9 (Northern Marianas Civil Service Act of 1978)
> Public Law 2-1 (Commonwealth Omnibus Appropriations Act of 1979)

We are bound by the facts as they are presented to us for the purpose of reviewing this appeal. From the facts presented before it, the court below concluded that the Order is a reallocation of offices within the executive branch. The trial court held that "the office or official implementing the Civil Service Commission policies is directly involved in executive branch functions and . . . may attempt to reorganize the office by executive order."[4] It concluded that "the power of the Governor in reallocating offices and restructuring the agencies and its instrumentalities of the executive branch under Section 15 is extensive"[5] but is subject to legislative control. We are in agreement with the trial court's conclusion.

The language of the section is unambiguous as to the Governor's power to implement changes in executive offices to ensure efficient administration. The analysis of Section 15 further shows that the Governor is not precluded from initiating administrative organizations:

> It is the legislature's responsibility to establish departments, to define their functions, powers and duties, and to make changes as appropriate. The legislature may reorganize the executive branch at any time to change the allocation of responsibilities among departments or to create or abolish departments by the enactment of appropriate laws. This section also provides that the governor may take the initiative in administrative reorganization. If any changes in the law are required, this section authorizes the governor to effect such changes by executive orders to each house of the legislature. Such an executive order becomes effective sixty days after submission unless modified or disapproved by a majority of the members of each house of the legislature. (emphasis added)
>
> Analysis of the Constitution at 83-84.

- - - - - - - - - -

[4]Id. at 4.

[5]Id. at 5.

The language of the analysis is clear and unambiguous. The framers of the constitution gave the Governor the right to initiate changes that may be needed to carry out the administrative affairs of the executive branch. At the same time, the framers limited this power by requiring the Governor to submit executive orders to the legislature whenever they affect existing laws. In the instant case, the Order was submitted to the legislature and the required number of days had lapsed with neither house taking any action modifying or disapporving the Order. The Order therefore became effective upon the expiration of the sixty-day period.

B.    The Duties and Functions of the Personnel Office
      are Executive in Nature

The plaintiff argues that the Personnel Office is a regulatory and quasi-judicial body rather than an executive agency subject to the provisions of Section 15. He supports this contention by pointing out that Public Law 1-8 (the Executive Organization Act of 1978) which established the organization of the executive branch did not address the organization of the Personnel Office. Instead, plaintiff argues, it is through Public Law 1-9, which established the Civil Service Commission and Personnel Office, that it owes its existence. See plaintiff's Opening Brief at 11. We disagree. We held in Camacho v. Civil Service Commission that the Commission exists primarily "to perform executive functions although independent to the extent it is to be free of political manipulation," supra note 1 at page 12. The Personnel Office, in turn, is the administrative arm and under the supervision of the Commission. It follows therefrom that the duties and functions of the Personnel Office are executive functions which may be subject to reorganization and reallocation through an executive order. In this case, it is the transferring of the functions and duties of the Personnel Office to the Office of Personnel established by the Executive Order.

308

C.   The Transfer of Funds

The transfer of funds from the Personnel Office to the
Office of Personnel was provided for in paragraph six of the
Order:

> All funds appropriated for the operations and
> activities of Civil Service Commission allocated
> to the Personnel Office are hereby transferred
> to the Office of the Governor to be used pursuant
> to the provisions of this Order.

Appellant argues that Public Law 2-1 provides that only the
Personnel Officer and Civil Service Commission may reprogram
funds appropriated for the Personnel Office.  Section 9,
Article III of the Commonwealth constitution rebuts appellant's
contention.  The relevant portion of this section provides
that "if a budget is approved by the legislature, the
governor may not reallocate appropriated funds except. as
provided by law."  Section 15 of Article III (quoted at pp. 4-5)
provided the governor the authority to transfer the funds
from the Personnel Office to the Office of the Governor in
order to carry out the purpose of Executive Order No. 18.
Paragraph six was included in order to accomplish the functions
and duties transferred from the Personnel Office to·Office of
Personnel.  The provision contained therein affects existing
law namely the appropriation for the.Personnel Office under
Title II, Section 2 of Public Law 2-1, and therefore is also
subject to the sixty-day consideration by the legislature.
Because the legislature did not take any action to modify or
disapprove the entire Order, including paragraph six, ipso
facto, the limitation found in Section 2 was amended, thereby
allowing the funds to follow the Personnel Office.

We are cognizant of the appellant's concern that the
Governor's authority to reprogram funds without approval by
the fiscal committees of the legislature is limited to ten

309

percent (10%) of the amount appropriated. The manner in which the transfer was accomplished in this instance was not by reprogramming of funds as provided for under the administrative provisions of Public Law 2-1, Title I, Section 1, et. seq. It was more analogous to a budget request submitted by the executive branch to the legislature. The legislature in turn had sixty days to consider it. By not disapproving or modifying paragraph six, the legislature gave its tacit approval of the Governor's request.

For the reasons discussed above the order of the trial court denying plaintiff's motion for summary judgment and granting defendants' motion for summary judgment is AFFIRMED.

DATED: 20th day of April, 198 2.

CRISTOBAL C. DUENAS, District Judge

SAMUEL CONTI, District Judge

HERBERT D. SOLL, Designated Judge